IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

KIRK D. CARTER,

     Plaintiff,

v.                                      No. 1:26-01057-STA-jay

TRE HARGETT, *in his official capacity as*
*Tennessee Secretary of State*; and
GIBSON COUNTY ELECTION COMMISSION,

     Defendants.

---

REPORT AND RECOMMENDATION

---

On March 17, 2026, Plaintiff Kirk D. Carter, a candidate for the Tennessee State House of Representatives District 79 and proceeding pro se[1], brought this action against Defendants Tre Hargett, in his official capacity as the Tennessee Secretary of State, and the Gibson County Election Commission. (Docket Entry ["D.E."] 1). He contends that Tenn. Code Ann. §§ 2-5-203 and 2-5-208 violate his First and Fourteenth Amendment rights because these statutes direct that his name appear on the ballot as an "Independent" instead of his preferred "Independent Conservative" descriptor. (*Id.*). In his initial pleading, Carter sought a temporary restraining order and a preliminary injunction enjoining Defendants from printing ballots that do not identify him by his preferred political designation.

On March 19, 2026, the undersigned issued a recommendation that Carter's request for a temporary restraining order be denied because he failed to comply with the notice provisions of

---

[1] Because Carter is proceeding pro se, this case has been referred to the undersigned United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05.

1

Rule 65(b) of the Federal Rules of Civil Procedure and Local Rule 65.1. (D.E. 5). On March 25, 2026, Carter objected to the Report and Recommendation, and on March 30, 2026, United States District Judge S. Thomas Anderson overruled Carter's objection, adopted the March 19, 2026, Report and Recommendation, and denied Carter's request for a temporary restraining order without prejudice. (D.E. 10).

Contemporaneous to the filing of his objections to the March 19, 2026, Report and Recommendation, Carter filed the instant motion for preliminary injunction. (D.E. 7). In that motion, Carter seeks to enjoin Defendants from printing ballots for the August 6, 2026, primary and the November 3, 2026, general election that do not include the "Independent Conservative" descriptor on his ballot line. (*Id.*). On April 8, 2026, Defendants filed a response in opposition to Carter's motion for preliminary injunction. (D.E. 13). On April 13, 2026, Carter filed a reply to Defendants' response. (D.E. 14). It is recommended that Carter's motion for preliminary injunction be **DENIED**.

I.

As an initial matter, Carter has filed a reply to Defendants' response to his motion for preliminary injunction without first seeking leave from the Court to file a reply. Local Rule 7.2(c) provides that '[e]xcept as provided by LR 12.1(c) and LR 56.1(c), reply memoranda may be filed only upon court order granting a motion for leave to reply. Such motion for leave must be filed within 7 days of service of the response." L.R. 7.2(c). Because Carter has failed to comply with Local Rule 7.2, his reply should be stricken and not considered by the Court. Carter is admonished to familiarize himself with the Local Rules of the United States District Court for the Western District of Tennessee and is warned that failure to adhere to these rules, as well as the Federal Rules of Civil Procedure, may result in sanctions.

II.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 395 (6th Cir. 2021). Courts, including many within the Sixth Circuit, have generally held that failure to effectuate proper service on a defendant bars issuance of injunctive relief against such defendant. *See Yang v. Shenzhen Hongfangrui Tech. Co.*, No. 23-cv-13001, 2023 WL 8370407, at *1, (E.D. Mich. Dec. 4, 2023) (collecting cases); *Erard v. Johnson*, 905 F. Supp. 2d 782, 793 (E.D. Mich. 2012) (same).

Service of process on a state or any other state-created governmental organization must be effectuated by "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under Tennessee law, proper service on the State of Tennessee or any agency thereof requires "delivering a copy of the summons and of the complaint to the attorney general of the state or to any assistant attorney general." Tenn. R. Civ. P. 4.04(6).

On March 25, 2026, summonses were issued for the Gibson County Election Commission and Tennessee Secretary of State Tre Hargett. (D.E. 6). On March 31, 2026, Carter filed the summonses returned executed and indicated that both summonses had been served on March 26, 2026, via FedEx Corporation ("FedEx"). (D.E. 11). Seeing that Carter did not make any attempt to serve the Tennessee attorney general or an assistant attorney general, his effort to serve the Defendants is governed by Federal Rule of Civil Procedure 4(j)(2).

Federal courts have concluded that the requirement of service by "registered or certified mail" means a party must use the U.S. Postal Service rather than a private delivery company like FedEx. *See Shepard v. U.S. Dep't of Veterans Affs.*, 819 F. App'x 622, 623 (10th Cir. 2020); *Audio Enters., Inc. v. B & W Loudspeakers,* 957 F.2d 406, 409 (7th Cir. 1992) (rejecting, for purposes of personal jurisdiction, that service by FedEx constituted service by "first class mail, postage prepaid" under Rule 4(c)(2)(C)(ii) (as the Rule then read)); *Suleymanov v. Winston Premier Logistics, LLC*, No. 3:21-cv-810 (JAM), 2023 WL 5767674, at *5 (D. Conn. Sep. 7, 2023); *Lietz v. DEA*, No. 1:22-cv-00209-BLW, 2023 WL 4303853, at *2–3 (D. Idaho June 30, 2023); *Sample v. Dollar Gen.*, No. 21-0371-TFM-MU, 2022 WL 885770, at *4 (S.D. Ala. Feb. 7, 2022); *Hin v. U.S. Dep't of Just. U.S. Marshals Serv.*, No. 2:21-cv-00393-TLN-JDP, 2022 WL 705617, at *7–8 (E.D. Cal. Mar. 9, 2022); *McGee-Hudson v. United States*, No. 16-796-JWD-EWD, 2017 WL 11708325, at *6–7 (M.D. La. July 10, 2017) (finding that service on the United States pursuant to Rule 4(i) "requires service of process by registered or certified mail, and service by FedEx is simply not an acceptable substitute"); *cf. Zavala v. Jaddou*, No. CV 22-1180 FMO (GJSx), 2023 WL 2731696, at *1 (C.D. Cal. 2023) (use of U.S. Postal Service's "Priority Mail Express" service did not satisfy Rule 4(i)'s requirement for use of "registered or certified mail"). Thus, "[s]everal federal courts have held that the term 'mail' in the Federal Rules of Civil Procedure governing service does not encompass private carriers such as FedEx." *NxSystems, Inc. v. Monterey Cnty. Bank*, No. 3:12–CV–00905–ST, 2012 WL 4093932, at *2 (D. Or. 2012) (internal citations omitted).

Because Defendants have not been properly served, the Court should conclude that it cannot exercise jurisdiction over Defendants or address Carter's motion for a preliminary injunction until Carter has perfected service on the Defendants.

4

III.

Notwithstanding the fact that Carter has failed to properly serve either Defendants and, thus, injunctive relief is not available until personal jurisdiction over these Defendants is obtained, the undersigned recognizes the time-sensitive nature of the relief Carter seeks from this Court as the deadline for printing ballots draws near. Even if Carter had properly served the Defendants, however, his bid for a preliminary injunction would still fall short and should be denied.

"The party seeking the preliminary injunction bears the burden of justifying such relief…." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). When reviewing motions for preliminary injunctive relief, courts assess "(1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Id.* "These factors ... are [] to be balanced against each other." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). But "they do not carry equal weight." *Memphis A. Phillip Randolph Inst. v. Hargett*, 478 F. Supp. 3d 699, 703 (M.D. Tenn. 2020). Failing to prove a likelihood of success is usually fatal to obtaining injunctive relief, *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000), while failure to show an irreparable injury is always fatal, *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) ("A district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury." (cleaned up)). Preliminary injunctions are "extraordinary remed[ies] which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). Carter has not carried his burden.

A.   Carter Has Not Shown a Likelihood of Success on the Merits.

Carter contends that Tennessee Code Annotated §§ 2-5-203 and 2-5-208 violate his First and Fourteenth Amendment rights because "ballot labels are protected speech"; he is being subjected to "viewpoint discrimination and compelled silence"; and he is receiving "unequal treatment" under the law because parties get labels. (D.E. 7 at 1). Defendants counter that Carter's desire to have his preferred political designation used on the ballot is an impermissible attempt at using a ballot for political messaging, and that Tennessee law treats independent and party candidates the same.

Tennessee Code Annotated § 2-5-203 states that "[c]andidates who are not to be placed on ballots as nominees of a political party shall be known as 'independent' candidates." Tennessee Code Annotated § 2-5-208(d)(1) provides, in relevant part:

> … the name of each political party having nominees on the ballot shall be listed in the following order: majority party, minority party, and recognized minor party, if any. … A column for independent candidates shall follow the recognized minor party, or if there is not a recognized minor party on the ballot, shall follow the minority party ….

Tenn. Code. Ann. § 2-5-208(d)(1). Thus, these two statutes mandate that a candidate not belonging to a major or minor party must be listed on a ballot simply as an "independent" candidate and the order in which those labels appear on a ballot.

To determine whether Tennessee Code Annotated §§ 2-5-203 and 2-5-208 violate Carter's First and Fourteenth Amendment rights, the Court uses the framework set out by the U.S. Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). *Daunt v. Benson*, 956 F.3d 396, 407 (6th Cir. 2020). Under *Anderson-Burdick*, "a court must: (1) evaluate whether an election restriction imposes a severe or incidental burden; (2) assess

6

the state's interests in the restriction; and (3) ask if the state's interests make the burden necessary." *Kowall v. Benson*, 18 F.4th 542, 546 (6th Cir. 2021). The level of scrutiny applied "is determined by the magnitude of the burden." *Brown v. Yost*, 133 F.4th 725, 736 (6th Cir. 2025). If the burden is severe, "the regulation will be upheld only if it is 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (citing *Burdick*, 504 U.S. at 434). On the other hand, "[t]he State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788). There is no "'litmus-paper test' that will separate valid from invalid restrictions." *Anderson*, 460 U.S. at 789. Rather, a court must analyze each factor, as there is "no substitute for the hard judgments that must be made." *Id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

The Court must first determine whether Tennessee Code Annotated §§ 2-5-203 and 2-5-208 impose a severe or incidental burden on Carter. The magnitude of the burden imposed is measured by considering the rights at issue, "including whether alternative means are available to exercise those rights; the effect of the regulations on the voters, the parties and the candidates; evidence of the real impact the restriction has on the process; and the interests of the state relative to the scope of the election." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006).

A candidate does not enjoy "free rein over how he may be identified on the ballot, or even that he may use the ballot to convey a particular message." *Walden v. Kosinski*, 153 F.4th 118, 137 (2d Cir. 2025). "Ballots serve primarily to elect candidates, not as forums for political expression." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997). In *Timmons*, the U.S. Supreme Court evaluated whether a state law that prohibited candidates from appearing on a ballot as the nominee for more than one party violated an affected political party's First Amendment rights. *Id.*

7

at 354. The Court applied the *Anderson-Burdick* test and concluded that while the state law "prevent[ed the party] from using the ballot to communicate to the public that it supports a particular candidate who is already another party's candidate," it did not place a severe burden on the party's rights. *Id.* at 362. The law did not "restrict the ability of the [party] and its members to endorse, support, or vote for anyone they like"; the law did not "directly limit the party's access to the ballot"; it was "silent on parties' internal structure, governance, and policymaking"; and the party retained "great latitude in its ability to communicate ideas to voters and candidates through its participation in the campaign." *Id.* at 363. The Court found that the burdens the law "impose[d] on the party's First and Fourteenth Amendment associational rights—though not trivial—[were] not severe" and were "justified by 'correspondingly weighty' valid state interests in ballot integrity and political stability." *Id.*

Tennessee Code Annotated §§ 2-5-203 and 2-5-208 do not impose a severe burden on Carter's First Amendment rights. Carter is not entitled to use the ballot, and the political indicator he wishes to appear by his name, to send a political message. There is no indication that the statutes in question restrict Carter's ability to participate in the electoral process or an individual's ability or support or vote for him. Carter may communicate that he is an "independent conservative" candidate through traditional and social media, campaign signs, rallies, and personal interactions with potential voters. Accordingly, the burden these statutes place upon Carter's First Amendment rights is not severe.

Because the burden placed on Carter is not severe, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* at 358. Defendants point to the potential for voter confusion as the interest that is sought to be protected by restricting the political identifying labels placed on a ballot. States have a strong interest in the

8

stability of their political systems. *Id.* at 367. Furthermore "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials. *Id.* at 364. Because restricting political labels on a ballot is a reasonable means to achieve the interest of preventing voter confusion, the undersigned submits that Tennessee Code Annotated §§ 2-5-203 and 2-5-208 are reasonable and justified by the State's articulated interests. Accordingly, Carter has failed to demonstrate that he has a likelihood of success on the merits of his case.

  B. <u>Carter Will Not Suffer Irreparable Harm if the Injunction is Not Issued.</u>

  A movant can show irreparable injury resulting from the denial of a preliminary injunction by arguing that either (1) they will experience a "harm ... [that] is not fully compensable by monetary damages" or (2) their "claim is based upon a violation of [their] constitutional rights." *Overstreet*, 305 F.3d at 578. "And to merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical." *Memphis A. Phillip Randolph Inst.*, 478 F. Supp. 3d at 703–04.

  Carter avers that the harm he will suffer if the injunction he requests is not issued is that "voters [will be] blind to [his] conservative stance forever" if ballots are printed that do not identify him as an "Independent Conservative". (D.E. 7 at 2). In his affidavit, Carter further states that "conservatives may skip [him], thinking [he] is unaffiliated or random [and he] will lose votes that can't be recovered after the election." (D.E. 7-3 at ¶ 5). He further declares that "[b]allots must be prepared and printed soon for the August 6, 2026[,] primary[—]early voting starts July 17, 2026. UOCAVA military/overseas ballots mail upon request, often 45+ days early per federal law. Once printing begins, there's no fix[—]harm is irreversible." (*Id*. at ¶ 6).

9

Carter's proffered irreparable harm is purely speculative. Carter does not know who will or will not vote for him, and he cannot prove at this time that any votes he does not receive would be because the voter did not know his political beliefs due to his labeling on the ballot. He cannot show any potential injury he might suffer due to the ballot "Independent" descriptor with any certainty whatsoever.

C.   The Remaining Factors Also Weigh Against a Preliminary Injunction.

While Carter's failure to prove either a likelihood of success or an irreparable injury is fatal to his attempt to receive injunction relief, *see Gonzales*, 225 F.3d at 625; *Sumner Cnty. Schs.*, 942 F.3d at 327, the remaining factors also guide the Court to deny him a preliminary injunction. Defendants correctly point out that the State of Tennessee and its citizens have an interest in "clean" and "understandable" ballots to minimize potential voter confusion. (*See* D.E. 13 at 11). The descriptor Carter prefers is not objective and could easily lead to voter confusion. Further, the public has an interest in having the laws enacted by its state officials not be impeded by a federal court where there is no showing that the challenged state law is unconstitutional or in conflict with federal law. *See Tennessee v. U.S. Dep't of Ed.*, 104 F.4th 577, 591 (6th Cir. 2024).

IV.

For these reasons, Plaintiff Kirk Carter's Motion for Preliminary Injunction (D.E. 7) should be **DENIED**. In addition to denying Carter's request for injunctive relief, the Court should further **ORDER** him to properly serve Defendants as prescribed by Rule 4(j) of the Federal Rules of Civil Procedure.

10

Respectfully submitted, this the 28th day of April, 2026.

s/Jon A. York
UNITED STATES MAGISTRATE JUDGE


**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDATION DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**